## ELLA B. PERRY v. JOSEPH ORR.

1. A promise of marriage, accepted, is a contract, on breach of which the defendant cannot be arrested without proof of fraud, either in contracting the obligation, or in the subsequent conduct to avoid responsibility.
2. Although such action for breach is excepted in the seventh section of the act abolishing imprisonment for debt, it is within paragraph seventeen, Article I., of the constitution.
3. *Held*, that if a man promises to marry a woman, and at the same time, or afterwards, seduces her, by the influence of such promise, and then seeks to avoid the performance, by attempting to run away, with intent to abandon her, and refuses to marry her, his original promise was a fraud, and he can be held to bail.
4. There must be a special order, formally adjudging that there is fraud, shown to the satisfaction of the court or officer ordering the arrest.

---

On motion made in behalf of defendant to quash the order

for bail, and to discharge him from arrest, in an action for breach of promise of marriage.

Argued before Justices BEDLE, WOODHULL, and SCUDDER.

For plaintiff, *Kingman & Johnson*.

For defendant, *E. T. Green*.

The opinion of the court was delivered by·

SCUDDER, J.　An interesting question of practice is raised by the motion and argument of the defendant's counsel in this case.　Upon affidavits showing a promise of marriage, consequent seduction, and an attempt of the defendant to depart from the state, with intent to abandon the plaintiff, an order was quickly made for his arrest, endorsed upon the *capias ad respondendum*.　The defendant was taken, gave a bail bond to the sheriff for his appearance, and now, before putting in special bail, moves to quash the order, because it was improvidently and irregularly made.

The position taken is, that a promise of marriage is a contract, upon a breach of which the defendant cannot be arrested without proof of fraud, either in contracting the obligation, or in his subsequent action to avoid responsibility; that no such proof has been made, and that the order made in the form used in cases of tort is a nullity.

The form of the action is *assumpsit*.　This is the usual and correct style, according to Chitty and Wentworth, and the cases found in the reports, and cited in our text books. An offer of marriage, accepted, is treated as an express contract.　It is an agreement upon sufficient consideration.　The consideration is the reciprocal promise.　If this be, then, an action founded on contract, it would be within the act respecting imprisonment for debt in cases of fraud, if it were not specially excepted in section seven of that act.　*Nix. Dig.* 386. The provisions of that act do not extend to actions on promises to marry.

This exemption cannot be said to mean that a writ of

*capias ad respondendum* shall not be awarded in such actions. The classification of this cause of action in the seventh section with contempts, defaults by public officers, and misconduct or neglect in office, shows that a harsher rule was intended than was applied in cases of breaches of ordinary contracts; that a wider scope was to be given to judicial discretion in holding to bail in such cases, than that prescribed by the statute in mitigation of the rigor of the old law of imprisonment for debt.

Neither can it be concluded that thereby the form of action was changed, and that what had previously been always regarded as a contract, now became, by implication, a tort, and that all the rules and forms applicable to torts must be used in suits for breach of promise of marriage. It still remains, in form, an action *ex contractus*, and subject to the requirements of the usual and legal procedure in such class of cases.

The fact that this action is an exception to the general rule of damages in suits upon contracts, extending the measure greatly beyond the usual allowance of a narrow and stinted compensation, has raised a doubt, at times, whether it does not properly sound in tort; but the established practice of our courts has settled otherwise. *Corl* v. *Wallace*, 4 *Zab.* 291; *Sedg. on Damages* \*210, \*368; *Smith* v. *Woodfine*, 1 *C. B.*, *N. S.*, (87 *E. C. L.*,) 667; *Berry* v. *Da Costa (L. R.)* 1 *C. P.* 331; *Chamberlain* v. *Wilson*, 2 *M. & S.* 408; 2 *Saund. P. and E.* \*664.

Prior to the statute respecting imprisonment for debt in cases of fraud, the practice in holding a defendant to bail in actions of *assumpsit* was, that where the action sounded in debt, as where it was for goods sold, or on a promissory note or the like, the defendant might be held to bail as of course, upon making and filing an affidavit of the cause of such action, and endorsing upon the writ the sum specified in the affidavit. But where it sounded merely in damages, and those damages were unliquidated, special bail could not be required, unless upon a judge's order. *Act of Feb. 2d,* 1799; *Nix. Dig.* 749, 222, 225; 1 *Archb. Prac.* 55; *Parker* v. *Ogden,* 1 *Penn.* 146; *Brookfield* v. *Jones,* 3 *Halst.* 311; *Cham-*

*pion* v. *Pearce*, 6 *Halst.* 196 ; *Peltier* v. *Washington Banking Co.*, 2 *Green* 257 ; *Benson* v. *Bennett*, 1 *Dutcher* 166.

These few citations show the former practice, both in actions upon contracts and in tort.

The act respecting imprisonment for debt, in cases of fraud, was first passed March 9th, 1842. *Laws* 1842, *p.* 130. It was afterwards revised and approved April 15th, 1846.*

It antedates the constitution of 1844, and introduced the restriction upon imprisonment for debt, limiting it to cases of fraud.

Some of us remember the circumstances of the passage of this law. It was the result of a popular movement, the clamor of the people against the incarceration of honest and unfortunate debtors, who could only escape through the oftentimes tedious and bitterly-contested proceedings of the Insolvent Courts. This severity had become so odious that an amelioration of the law was demanded, and it was attained by the enactment of this statute.

Two years after the passage of this law, a new constitution of this state was agreed upon, and adopted by the people August 13th, 1844.

The seventeenth paragraph, Article I. of the constitution, perpetuates this humane provision of our law, and ordains that " no person shall be imprisoned for debt in any action, or on any judgment founded upon contract, unless in cases of fraud," &c.

All proceedings at law upon contracts are therefore referable to the act aforesaid, and this clause of the constitution. If, as in the case of promises of marriage, they are excepted from the law, then they stand upon the constitutional requirement that there shall be fraud to warrant an arrest.

The first clause of this paragraph—" no person shall be imprisoned for debt in any action "—is not confined to the technical meaning of debt; it includes debt in the popular sense of a demand founded on contract express or implied, and comprises all actions *ex contractus*. This construction is historically true, if it be admissible to use such evidence, as

* *Rev.*, p. 856.

will appear by reference to the debates upon this section in the constitutional convention, reported in the *Newark Daily Advertiser*, June 18th, 1844. In the discussion of this paragraph, the purpose shown was to abolish imprisonment for debt co-extensive with the first and second sections of the statute of 1842, leaving it to the legislature to define what shall constitute fraud, as they had already done in those sections, and as they might do thereafter. Thus the statute stood, after the constitution was established, in harmony with its provisions, and not repealed by it.

This appears in the almost contemporaneous exposition of this paragraph given by Chief Justice Hornblower, who was a member of the convention, in *Ex parte Clark*, *Spencer* 648, and has since been followed in other cases. The constitution and statute are *in pari materia*, and may be used together for the purpose of construction.

A doubt of this construction has been caused by the use of the word " debt" in the first clause, and " contract" in the second, implying that the one is used in a sense more limited than the other. An explanation will be found by referring to the proceedings of the convention. As this section was first introduced, it stood : " No person shall be imprisoned for debt in any action, unless in case of fraud." But as every judgment, when entered, becomes a debt of record, it was observed that this clause might be construed to restrict the issue of *capias ad satisfaciendum* in actions *ex delicto*. The additional clause, " or on any judgment founded upon contract," was then introduced for greater certainty, and to preserve the distinction between the two classes of actions.

This construction agrees with the act of 1842, revised and approved in 1846, in the two members of the paragraph. Thus, section one enacts that the writ of *capias ad respondendum* shall not henceforth be awarded, issued, or served in any action founded upon contract express or implied, &c. Section two enacts that the writ of *capias ad satisfaciendum* shall not henceforth be awarded or issued upon any judgment founded upon contract express or implied, except, &c.—the concluding clause, " except in case of fraud," being applicable to

both members of the paragraph, as it is to both sections of the act. If it be asked, why did not the convention insert the general terms that there should be no imprisonment in actions founded on contract, to include both clauses of the paragraph? the answer will be found, I think, in the fact that the expression, imprisonment for debt, had become popularized, and there was a desire to retain it in the fundamental law. That this wider meaning of the word debt was intended, I think also appears from the title of the act. It is entitled " An act respecting *imprisonment for debt* in cases of fraud." Yet it will be found, on reading the act, that this title is made to comprehend, in express terms, not only a debt, but also a demand founded on contract, both in the original and final process. These circumstances show both the popular and legislative use of the term imprisonment for debt at that time; and I am persuaded that the delegates, in forming the constitution, acted with reference to such usage.

The statute is thus an exposition of this constitutional provision, both preceding it and re-asserting its intent by subsequent re-enactment.

Another consideration, it appears to me, should have some weight in settling this construction. If this interpretation be not allowed, then actions upon contract sounding in damages are excluded from this paragraph, and the absurd result might follow, that a person could be arrested in the preliminary proceedings, and when judgment was obtained against him, establishing the justice of the demand, he would be released unless fraud were shown,

If these premises be true, then a promise of marriage, being a contract, is within the seventeenth paragraph of article I. of the constitution, and a party to such promise cannot be held to bail, except in case of fraud.

As, however, it is expressly excepted from the limitations of fraud, as defined in the statute, it is left for judicial construction to determine what shall constitute fraud in such cases. Do the affidavits in this case show fraud?

I think it should be held by this court, that if a man prom-

ises to marry a woman, and at the same time, or afterwards, by the influence of such promise, seduces her, and then seeks to avoid the performance of his promise, by running away, with the intent to abandon her, his original promise was a fraud, and intended to deceive and betray her.

In the case of *Ex parte Clarke*, the Chief Justice says: "Whatever is dishonest, is fraudulent *in foro conscientiæ*, and is so treated in a court of equity. Fraud and dishonesty are synonymous terms. The true spirit of the constitution is this—and it speaks the enlightened and benevolent language of the age in which we live; the honest debtor, who is poor, and has nothing to pay with, shall not be imprisoned at the mercy of his creditor. But if the debtor, instead of putting himself upon his honest poverty, *seek to elude the jurisdiction and process of the courts;* if he conceal, or assign, or remove his property, to keep it out of the reach of his creditors; or if he have the means in his pocket, or under his control, of paying his debt, and refuse to do so, he is a dishonest and fraudulent man. He is the very man that the constitution says may be, and that common sense and common honesty say ought to be, imprisoned until he disgorge his money, and deliver up his property to his confiding creditor."

It is an argument from the less to the greater to say that he who betrays the confidence of one who has trusted him, and ruins her, is dishonest and fraudulent, insomuch as the price of virtue is beyond all computation. Its loss can never be compensated. It is in the interest of good morals, of humanity, and for the public welfare, to be severe with one who thus violates his promise.

The affidavits in this case sufficiently disclose the facts of the promise to marry, the seduction effected by means of the same, the attempt to elude the jurisdiction and process of the court, and the refusal to marry. Such conduct is fraudulent.

It is further insisted that, admitting the right to hold the defendant to bail, the order in this case is irregular, and should be quashed. The writ has endorsed upon it the com-

mon order used in actions of tort: "Let the defendant be held to bail in the sum of five hundred dollars."

This is not sufficient. Under the peculiar requirement of the constitution, that the defendant can only be imprisoned in cases of fraud, there must be a special order, formally adjudging that there is fraud, shown to the satisfaction of the court or officer ordering the arrest.

This is in analogy with the procedure under the statute, and should be required in favor of the liberty of the citizen. *Hill* v. *Hunt, Spencer* 476.

As the order is irregular on its face, the writ should be quashed, so that the defendant may be re-arrested. To discharge him from arrest, upon entering common bail, or an appearance to the action, as was done in *Vankirk* v. *Staats*, 4 *Zab.* 122, might defeat the plaintiff's remedy. But if the plaintiff prefer, the defendant may be discharged on common bail.

CITED *in Hayden* v. *Vreeland*, 8 *Vr.* 376.